**FILED**

September 30, 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ **JW**

DEPUTY

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| ERIK MANRIQUEZ, | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | **3: 24-CV-00422-LE** |
| | § | |
| LELAND DUDEK, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| *Defendant*. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This is a civil action seeking judicial review of an administrative decision by the Social Security Administration (SSA). Pursuant to 42 U.S.C. § 405(g), Plaintiff Erik Manriquez, the claimant at the administrative level, appeals from the final decision of Defendant Leland Dudek, the SSA's Acting Commissioner, denying his claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, et seq. The parties consented to the magistrate judge conducting all proceedings, including the entry of final judgment. For the reasons that follow, the SSA's Acting Commissioner's decision is AFFIRMED.

## I.   BACKGROUND & PROCEDURAL HISTORY

Manriquez is a thirty-nine-year-old man with a high school education and past relevant work as a customer service representative.[1] In February 2023, Manriquez applied for disability insurance Benefits.[2] T h e alleged disability began October 29, 2020, due to several physical and mental impairments, including rheumatoid arthritis, depression, anxiety, and post-traumatic stress disorder.[3]

---

[1] Tr. of Admin. R. at 39 [hereinafter, "Tr."], ECF No. 4.
[2] *Id.* at 31.
[3] *Id.* at 33.

1

On July 11, 2023, Manriquez's disability claims were denied, and again upon reconsideration on January 16, 2024.[4] Administrative Law Judge ("ALJ") Holly Hansen held a telephonic hearing on July 2, 2024, and later issued a decision denying Manriquez's claims on August 5, 2024.[5] Manriquez requested review of the ALJ's decision on August 16, 2024, which was denied by the Appeals Council on September 24, 2024.[6] The ALJ's decision became the final decision of the Commissioner at that time. Manriquez now seeks judicial review of the decision.

Manriquez's physical impairments center around pain and swelling in his right ankle, both feet, neck, upper back, and both wrists.[7] Manriquez testified that he received a prescription for a cane in "2018 or 2019" and wrist splints in March of 2023.[8] The ALJ acknowledged Manriquez has the following severe impairments: "osteoarthritis, bilateral carpal tunnel syndrome, rheumatoid arthritis, hypertension, obesity, depression, anxiety, and post-traumatic stress disorder."[9]

Regarding his mental health, Manriquez testified that he has depression, feels very fatigued, has no motivation, is very unfocused, doesn't look forward to things, blurts out bad words due to his PTSD, and has episodes when he is very angry and upset.[10] Manriquez testified that these anger episodes last "30 to 45 minutes."[11] Further, Manriquez testified that due to his anxiety and PTSD, he has had anger episodes at a prior job with co-workers, customers, and supervisors, which resulted in reprimands.[12]

---

[4] *Id.* at 31.
[5] *Id.* at 31-41.
[6] *Id.* at 15.
[7] *Id*. at 54-55.
[8] *Id*. at 55-57.
[9] *Id*. at 33.
[10] *Id*. at 63.
[11] *Id*. at 65.
[12] *Id*. at 70-71.

On appeal, Manriquez presents five issues for the Court. First, Manriquez alleges the ALJ decision is not supported by substantial evidence because she failed to adequately evaluate Manriquez's manipulative limitations in formulating Manriquez's residual functional capacity ("RFC").[13] Second, Manriquez maintains that the ALJ failed to adequately assess the medical necessity of the wrist braces.[14] Third, Manriquez argues that the ALJ failed to adequately assess the medical necessity of a cane for balance.[15] Fourth, Manriquez maintains that the ALJ failed to adequately assess social interaction limitations.[16] Fifth, Manriquez argues that the ALJ failed to determine if a job exists in significant enough numbers.[17]

For the reasons set forth below, the Court affirms the ALJ's decision.

## II.    DISCUSSION

### A. <u>Standard of Review</u>

Judicial review of the Commissioner's decision is limited to determining whether (1) the Commissioner's final decision is supported by substantial evidence on the record and (2) the Commissioner applied the proper legal standards. See 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015). In applying this standard, courts evaluate and scrutinize the record to determine if such evidence is present. *Id.* However, the court may not "reweigh the evidence." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). Further, in any conflict or evidentiary uncertainty, the court cannot substitute its

---

[13] Plaintiff's Brief at 9 [hereinafter, "Pl. Br."], ECF No. 7.
[14] *Id.* at 14–15.
[15] *Id.* at 16.
[16] *Id.* at 18.
[17] *Id.* at 20–21.

judgment for the Commissioner's, even if they believe the evidence weighs against the Commissioner's decision. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Sun*, 793 F.3d at 508. A finding of "no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016).

Generally, where the Commissioner applies an incorrect legal standard in evaluating the evidence, they must reconsider the denial." *Leidler v. Sullivan*, 885 F.2d 291, 294 (5th Cir. 1989). However, legal error alone does not mandate reversal, and remand is appropriate if the error is harmful. *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023) (per curiam) (unpublished) (citing *Shineski v. Sanders*, 556 U.S. 396, 407–08 (2009)); As the Fifth Circuit stated, "Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). An error is harmless when "it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). The burden is on the plaintiff to show harm from the error. *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012).

**B. <u>Evaluation Process</u>**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment… which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* U.S.C. § 416(i). In evaluating a disability claim, the ALJ follows a five-step sequential process to determine whether: (1) the claimant is currently engaged in substantial gainful employment; (2) the claimant has a severe medically determinable

physical or mental impairment; (3) the claimant's impairment meets or medically equals a listed impairment in the appendix to the regulations; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from performing other substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4); *Salmond*, 892 F.3d at 817.

Between steps three and four, the ALJ assesses the claimant's "residual functional capacity" ("RFC"), which reflects the most the claimant can still do despite their limitations. 20 C.F.R. § 404.1520(e); § 404.1545(a)(1). In making the RFC, the ALJ considers "all of the relevant medical and other evidence." *Id*; § 404.1545(a)(3). When evaluating medical opinions, the ALJ must assess the persuasiveness based on several factors, though only supportability and consistency must be addressed in the decision. *Id*; § 404.1520c(a); § 404.1520c(b)(2). The claimant's RFC is then used at step four and five in making determinations as to the claimant's ability to perform past work or perform other work. *Id*; § 404.1520(e).

The claimant carries the burden of proof through the first four steps. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). If the claimant meets this burden, at step five the burden shifts to the Commissioner "to show that there is other substantial gainful employment available that the claimant is capable of performing." *Fraga v. Bowen*, 810 F.2d 1296, 1301–02 (5th Cir. 1987). If the Commissioner meets this burden, "the burden then shifts back to the claimant to prove that he is unable to perform the alternate work." *Id*. at 1302.

## C.  **The ALJ's Findings**

At step one, the ALJ found that Manriquez had not engaged in substantial gainful activity since the amended alleged disability onset date of October 29, 2020.[18] At step two, the ALJ found that Manriquez had the following severe impairments: osteoarthritis, bilateral carpal tunnel

---

[18] Tr. at 33.

syndrome, rheumatoid arthritis, hypertension, obesity, depression, anxiety, and post-traumatic stress disorder.[19] At step three, the ALJ concluded that Manriquez did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[20] Next, at step four, the ALJ found that Manriquez retained the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) except he can occasionally balance, kneel, stoop, crouch, and crawl, never climb, frequently handle and finger bilaterally, occasionally reach overhead bilaterally, and never operate right foot controls."[21] Further, the ALJ found that Manriquez can "perform simple and detailed tasks but not complex tasks, can adapt to routine changes in a routine work setting, can have frequent interaction with the public and would require a cane to ambulate during the workday."[22]

### D. <u>Analysis</u>

On appeal, Manriquez presents five issues for the Court.  First, Manriquez alleges the ALJ decision is not supported by substantial evidence because she failed to adequately evaluate Manriquez's manipulative limitations in formulating Manriquez's residual functional capacity.[23]  Second, Manriquez maintains that the ALJ failed to adequately assess the medical necessity of the wrist braces.[24]  Third, Manriquez argues that the ALJ failed to adequately assess the medical necessity of a cane for balance.[25]  Fourth, Manriquez maintains that the ALJ

---

[19] *Id.* at 33.
[20] *Id.* at 34.
[21] *Id.* at 36.
[22] *Id.*
[23] Pl. Br. at 9.
[24] *Id.* at 14–15.
[25] *Id.* at 16.

failed to adequately assess social interaction limitations.[26] Fifth, Manriquez argues that the ALJ failed to determine if a job exists in significant enough numbers.[27]

### 1. Whether Manriquez Has Shown Greater Manipulative Limitations Than the ALJ Assessed in the RFC

The ALJ based the RFC on the medical opinions of two State Agency medical and two psychological consultants.[28] At step four, the ALJ concluded that Manriquez is "unable to perform any past relevant work."[29] At step five, considering Manriquez's age, education, past work experience, and RFC, the ALJ concluded that there are other jobs that exist in significant numbers in the national economy that the claimant can also perform.[30] Specifically, the ALJ relied on the vocational expert testimony that given all these factors, Manriquez would also be able to perform work as a callout operator, telephone quotation clerk, and charge account clerk.[31] Therefore, the ALJ determined that Manriquez was not disabled under the Social Security Act from October 29, 2020 (his alleged disability onset date) through August 5, 2024 (the date of the ALJ's decision).[32]

The ALJ is solely responsible for weighing the medical evidence and determining a claimant's residual functional capacity. As the Fifth Circuit has emphasized, the "task of weighing the evidence is the province of the ALJ." *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). This includes evaluating conflicting medical opinions and deciding how much weight to assign each source. *Adams v. Colvin*, 202 F. Supp. 3d 644, 649 (W.D. Tex. 2016).

---

[26] *Id.* at 18.
[27] *Id.* at 20–21.
[28] Tr. at 38.
[29] *Id.* at 38.
[30] *Id.* at 40.
[31] *Id.*
[32] *Id.*.

In this present case, the ALJ evaluated the medical opinions of Drs. Jeanine Kwun and Gulnara Martorella.[33] The ALJ, based on consistency with the record, objective findings, and Manriquez's reported activities, found the opinions to not be persuasive.[34] In fact, the ALJ found, through evidence developed through the hearing, even more significant limitations than the two state agency physicians noting "…the evidence developed through the hearing level shows more significant limitations."[35] Further, neither Dr. Kwun nor Dr. Martorella "assessed any manipulative limits, which is inconsistent with the claimant's severe bilateral radio-carpal osteoarthritis (B15F/184, 198, 277)."[36]

In formulating the RFC, the ALJ must consider the totality of the evidence in the record, not just medical opinions. *Garner v. Kijakazi*, No. 1:22-CV-0563-DH, 2023 WL 1976713, at *5 (W.D. Tex. Feb. 13, 2023) (citing 20 C.F.R. § 404.1529(a)-(d)). This includes Manriquez's medical history, clinical signs, laboratory findings, reported symptoms, daily activities, medications, and treatment history. *Id*. The ALJ noted Manriquez's rheumatoid arthritis, osteoarthritis in both hands, and bilateral carpal tunnel syndrome.[37] The ALJ also recognized that Manriquez's pain has significantly improved, and that his rheumatoid arthritis was in remission.[38] Further, Manriquez's medications have been effective.[39] The ALJ also considered Manriquez's daily activities such as going on short walks, "spending time with family, playing with his son, watching Netflix, [and] playing video games with his family."[40]

---

[33] *Id*. at 38-39, 86, 98.
[34] *Id*. at 39.
[35] *Id*. at 38.
[36] *Id*.
[37] *Id*. at 37.
[38] *Id*.
[39] *Id*.
[40] *Id*. at 38.

The RFC does not need to "mirror or match" any specific medical opinion, as long as it is supported by substantial evidence in the record. *David W. G. v. O'Malley*, No. 4:23-CV-3462, 2024 WL 5284884, at *7 (S.D. Tex. Dec. 3, 2024). Courts recognize that an ALJ may synthesize multiple sources of evidence and need not adopt or reject a single medical opinion wholesale. *Lopez v. Kijakazi*, No. SA-21-CV-00930-ESC, 2022 WL 4355142, at *4 (W.D. Tex. Sept. 20, 2022).

The ALJ decision reflects the intent to address both the medical notes and the medical consultant's opinions.[41] While the ALJ is not required to adopt any single opinion, the conclusion must be grounded in the record, which the ALJ has done here, building a cohesive narrative. *David W. G.*, No. 4:23-CV-3462, 2024 WL 5284884, at *7 (S.D. Tex. Dec. 3, 2024). Moreover, even where the record lacks a medical source statement regarding functional limitations, that alone does not render the RFC unsupported. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The Fifth Circuit has held that the absence of a medical source statement describing the claimant's limitations does not in itself make the record insufficient. *Id.*; *see also Nic R. v. Kijakazi*, 2023 WL 2529930, at *5. The ALJ may rely on other evidence in the record to assess functional limitations, if that evidence is sufficiently specific and probative. *Id.*

Substantial evidence in this context means "more than a scintilla" and must consist of relevant evidence that a reasonable mind might accept as adequate to support the RFC. *See Donna A. v. Comm'r of Soc. Sec.*, No. 5:22-CV-111-H-BQ, 2023 WL 5004867, at *4 (N.D. Tex. July 17, 2023) (citing *Moreno v. Astrue*, 2010 WL 3025525, at *3). This includes evidence demonstrating the effects of impairments on the claimant's ability to perform work-related functions. *Id.* In making this determination, the ALJ is expected to build "an accurate and logical

---

[41] *Id.* at 28-79.

bridge" between the evidence and the conclusion reached. *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010). If the ALJ's analysis lacks such a bridge or rests solely on lay interpretation of raw medical data, it may be reversible error. *See Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). Where the record contains insufficient or ambiguous evidence regarding a claimant's impairments, the ALJ may request a consultative examination. *See* 20 C.F.R. § 404.1517. The failure to do so may be problematic if the existing record cannot support a proper evaluation of functional capacity.

In this case, the ALJ's explanation connected the evidence to the limitations found.[42] The RFC formulation noted Manriquez showed decreased range of motion in the wrists, had used bilateral supportive wrist braces, and images showed severe narrowing at the radio-carpal joint spaces bilaterally, diagnosed as severe bilateral radio-carpal osteoarthritis (B15F/184, 198, 277).[43] The medical sources provided an opinion that did not address Manriquez's manipulative limitations consistent with severe bilateral radio-carpal osteoarthritis.[44] Nevertheless, the ALJ relied on the medical reports and testimony to establish Manriquez's abilities to "frequently handle and finger bilaterally."[45] The record was adequately developed, and includes discussion of Manriquez's wrist splints, the medical experts' opinions, Manriquez's physical ailments, and Manriquez was allowed to testify regarding his wrist and hand pain, and carpel tunnel.[46] Overall, the evidence cited does satisfy the substantial evidence standard. In sum, the ALJ's RFC determination is supported by substantial evidence, reflects appropriate consideration of the full record, and comports with applicable legal standards.

---

[42] *Id.*
[43] *Id.* at 38.
[44] *Id.* at 38-39.
[45] *Id.* at 28-79.
[46] *Id.*

**2. Whether Manriquez has Shown His Wrist Braces or Splints Affected His RFC**

**(i) Legal Standard: Assistive Devices and the RFC**

Social Security Ruling 96-9p provides that a hand-held assistive device must be both medically required and clearly documented to impact the residual functional capacity (RFC) analysis. SSR 96-9p, 1996 WL 374185, at *7. Specifically, the ruling explains that if a medically required hand-held device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded. *Id*. Courts have upheld RFC determinations where the use of a device was alleged but not documented. *Donner v. Barnhart*, 285 F. Supp. 2d 800, 814 (S.D. Tex. 2002). For example, in *Donner*, 285 F. Supp. 2d 800, 814, the ALJ's RFC determination was found to be supported by substantial evidence in part because there was no medical documentation establishing the necessity of a back brace. *Id*. If the record lacks medical justification for the use of a device, the ALJ is not obligated to include it in the RFC. *Id*.

**(ii) Credibility and Symptom Evaluation**

An ALJ is not required to give subjective evidence precedence over objective medical evidence. As the Fifth Circuit held in *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988), the ALJ must evaluate the credibility of the claimant's complaints in light of the full record and resolve any conflict between subjective allegations and objective medical findings. The ALJ's evaluation of credibility is entitled to deference where it is based on substantial evidence and clearly explained. *Id*. In assessing credibility, the ALJ must consider whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are reasonably consistent with the medical and other evidence of record. *Id*. *See* 20 C.F.R. § 404.1529.

**(iii) Application: First Assistive Device – Wrist Braces**

Manriquez contends the ALJ did not account for the bilateral supportive wrist braces in the RFC,[47] and they were not incorporated as work restrictions into the hypothetical question posed to the VE.[48] ("The ALJ's decision is not based upon substantial evidence because the reason for the elimination of the braces was not identified. Moreover, the ALJ did not determine what Manriquez's handling and fingering capabilities are while using the wrist braces, versus when he is not using them.").[49]

While the wrist braces were medically prescribed, there is no documentation showing the need for wrist braces throughout Manriquez's workday.[50] The ALJ addresses this in her decision, noting:

> The record contains some notes showing decreased range of motion in the wrists (B2F/3, 37); he has used bilateral supportive wrist braces (B3F/28; B15F/102), and has stated that his hand numbness improves with wrist splints (B17F/9). He has also stated that when he stops using the splints, he has hand numbness again (B17F/12). Images have shown severe narrowing at the radio-carpal joint spaces bilaterally, diagnosed as severe bilateral radio-carpal osteoarthritis (B15F/184, 198, 277).[51]

Further, during his testimony, Manriquez noted that he received a prescription for a "wrist splints" to be used when he sleeps.[52] Manriquez further remarked when asked whether the wrist splints helped, "Not really, no. My doctor talked about injecting my wrist, with, I believe, steroids or something like that."[53]

---

[47] *Id.* at 36.
[48] *Id.* at 75-77.
[49] Pl. Br. At 15.
[50] Tr. at 55.
[51] *Id.* at 38.
[52] *Id.* at 54.
[53] *Id.* at 55.

The ALJ clearly inquired about and acknowledged the claimant's use of these wrist braces in making her decision.[54] Therefore, similar to the facts in *Donner*, 285 F. Supp. 2d 800, 814, where exclusion of a back brace was upheld due to lack of medical necessity, the wrist braces clearly are not limiting factors during Manriquez's workday. Thus, the ALJ reasonably concluded that the device was not medically necessary under SSR 96-9p.

### (iv) Application: Second Assistive Device – Cane

Manriquez contends the ALJ only addressed the medical necessity of a cane for ambulation and not for balance.[55] The medical records show that the cane was needed since Manriquez has displayed an "antalgic gait."[56] The ALJ considered this medical evidence, but according to Manriquez, only "accounted for the cane for ambulation while not addressing if it was also need for balance."[57]

Manriquez testified to using a cane daily for standing, opining that he stands comfortably with use of his cane for about "15 to 20 minutes."[58] Manriquez also testified to requiring the cane to walk "every day," including using it in the house, because of his right ankle problems.[59] Medical records indicate Manriquez needed a cane to ambulate,[60] but there appears to not be a diagnosis requiring the cane to balance. Further, the medical experts opine that Manriquez can "frequently balance."[61]

The ALJ clearly took a variety of physical limitations into account, noting the use of a cane in the function report and the Hearing Testimony[62] and Manriquez was given "every

---

[54] *Id*. at 28-79.
[55] Pl. Br. At 16.
[56] Tr. at 36.
[57] *Id*. at 38.
[58] *Id*. at 57.
[59] *Id*. at 67.
[60] *Id*. at 91,93.
[61] *Id*. at 38.
[62] *Id*.

consideration."[63] Moreover, the ALJ considered these impairments throughout the decision, including the limitations on walking distances and the necessity of the assistive device. *Slack v. Astrue*, No. 4:09-CV-393-Y, 2010 WL 3186449, at *6 (N.D. Tex. July 20, 2010), *report and recommendation adopted*, No. 4:09-CV-393-Y, 2010 WL 3186414 (N.D. Tex. Aug. 11, 2010). The ALJ recognized that there is some evidence that Manriquez uses a cane to ambulate and included in her RFC a limitation for use of a cane to ambulate during the workday.[64] This limitation is consistent with Manriquez's testimony. Thus, the ALJ reasonably concluded that the device was not medically necessary under SSR 96-9p.

### (v) Overall Analysis

The record is clear that the ALJ considered a number of factors, including inconsistencies in the medical evidence, Manriquez's daily activities, course of treatment, and his testimony at his hearing.[65] Thus, she clearly indicated the credibility choices she made and the basis he used for making those choices. *Hollis,* 837 F.2d 1378, 1385 (5th Cir.1988); 20 C.F.R. § 404.1529 (The ALJ will consider the extent to which Manriquez's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence). The ALJ's choice not to include a limitation in the RFC formulated is supported by substantial evidence.[66] Manriquez's testimony and medical evidence regarding cane use and hand limitations were fully considered, and the RFC reflected these impairments consistent with the medical record.[67]

---

[63] *Id.*
[64] *Id.*
[65] *Id.* at 28-79.
[66] *Id.*
[67] *Id.*

### 3. Whether the RFC Accounted for Manriquez's Moderate Limitation Interacting with Others

In assessing the severity of a claimant's mental impairment at steps two and three of the sequential evaluation process, an ALJ is required to use the psychiatric review technique ("PRT") as outlined in 20 C.F.R. § 404.1520a. This technique mandates that the ALJ rate the degree of the claimant's functional limitation in four broad areas of mental functioning: 1) the ability to understand, remember, or apply information; 2) the ability to interact with others; 3) the ability to concentrate, persist, or maintain pace; and 4) the ability to adapt or manage oneself. *See* 20 C.F.R. § 404.1520a(c)(3); *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1324–25 (11th Cir. 2021). These four areas mirror the "Paragraph B" criteria found in the listings for mental disorders under Appendix 1 and are commonly known as the "Paragraph B" criteria. See 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00A(2)(b). Each area of mental functioning is rated on a five-point scale: none, mild, moderate, marked, and extreme. *See* 20 C.F.R. § 404.1520a(c)(4). A finding of a "moderate" limitation in one of these areas indicates that the claimant's functioning in that domain is "fair" when acting independently, appropriately, effectively, and on a sustained basis. *See Id*. § 12.00F(2)(c). These ratings are then used to determine whether the mental impairment meets or equals a listed impairment and to inform the subsequent RFC analysis. *Id*.

Manriquez alleges the ALJ erred in evaluating his mental limitations related to social interactions because she reached internally inconsistent findings between the Paragraph B criteria and the RFC.[68] Manriquez notes the ALJ concluded that Manriquez had moderate limitations in interacting with others[69] which was consistent with the expert opinions of state agency psychological consultants, Dr. Jeannie Nunez and Dr. George Grubbs[70] who assessed

---

[68] Pl. Br. at 14.
[69] Tr. at 35.
[70] *Id*. at 83, 87, 94, 99.

moderate limitations in the ability to get along with co-workers or peers. However, as described by Manriquez, the ALJ, after reviewing the record, states Manriquez "shows no more than mild limitation in interacting with co-workers and peers."[71]

Once the PRT findings are made at steps two and three, the ALJ must evaluate the claimant's mental residual functional capacity. 20 C.F.R. § 404.1545(c). Under 20 C.F.R. § 404.1545(c), mental RFC reflects the claimant's ability to meet the mental demands of work on a sustained basis, including the abilities to understand, remember, and carry out instructions, and to respond appropriately to supervision, coworkers, and usual work pressures. *Id.* The RFC determination must consider the functional limitations identified through the PRT, even if the ALJ is not required to incorporate those limitations verbatim into the RFC. *Holmes v. Astrue*, No. 3:11-CV-2634-G BH, 2013 WL 638830, at *13 (N.D. Tex. Jan. 25, 2013), *report and rec. adopted*, 2013 WL 646510 (N.D. Tex. Feb. 20, 2013).

Here, at step three, the ALJ evaluated Manriquez's abilities in the Paragraph B functional areas and found that he has mild limitations in understanding, remembering or applying information[72] and adapting or managing oneself.[73] In interacting with others and with regard to concentrating, persisting or maintaining pace, the ALJ found Manriquez has a moderate limitation.[74] The ALJ then found that Manriquez has a mental RFC as follows: "A review of the records shows no more than mild limitation in interacting with co-workers and peers. At Exhibit B10E, the claimant reports that he was never let go due to inability to get along with others on the job. Further, the claimant remains alert, oriented, polite and cooperative."[75] The ALJ also

---

[71] *Id.* at 39.
[72] *Id.* at 34.
[73] *Id.* at 35.
[74] *Id.*
[75] *Id.* at 39.

considered the two state psychologists' opinions that Manriquez "has mild limitations with understanding, remembering and applying information; moderate limitations in interacting with others; moderate limitations with concentration, persistence, and pace; and mild limitations adapting and managing oneself," finding their medical opinions to be partially persuasive.[76]

Courts have consistently held that while the Paragraph B findings are both important and relevant to the RFC determination, they do not need to be carried over in identical terms. In *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019), the court explained that the Paragraph B criteria do "not necessarily translate to the language used at steps four and five" and do not require "the use of any particular language" in the RFC formulation. Similarly, in *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 916 (11th Cir. 2013), the Eleventh Circuit held that the ALJ is not required to incorporate Paragraph B functional limitations word-for-word into the RFC. That holding has been echoed by district courts within the Fifth Circuit. For example, in *Ernest A. J. v. Saul, No. 1:18-CV-00194-BU*, 2020 WL 6877706, at *16 (N.D. Tex. Oct. 19, 2020), the court found that the ALJ was not obligated to include Paragraph B findings verbatim in the RFC. Quoting *Patterson v. Astrue, No. 1:08-CV-109-C, 2009 WL 3110205*, at *5 (N.D. Tex. Sept. 29, 2009), the court affirmed that "the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into the RFC determination." That recommendation was subsequently adopted. *See* 2020 WL 6873609 (N.D. Tex. Nov. 23, 2020).

The ALJ met their duty to consider the Paragraph B findings in formulating the RFC. Manriquez indicated to the ALJ that:

> he had experienced no changes in mood, energy, interest, appetite or sleep, had no difficulty concentrating, had no psychomotor slowness, self-deprecating thoughts or guilt... His anxiety level had been 4/10, and manageable. He denied any

---

[76] *Id.*

suicidal or homicidal ideation, and reported no episodes of elevated mood with high energy, racing thoughts, talkativeness, distractibility, or grandiosity. He had no impulsive or risky behaviors. He denied hallucinations. He had no obsessions or compulsions. The mental exam was normal; his symptoms were stable (B16F/7-8).[77]

In formulating the mental RFC, the ALJ noted that Manriquez: "even when depressed, anxious, and/or irritable" can "remain alert, oriented, polite and cooperative."[78]

The ALJ appropriately evaluated Manriquez's mental impairment using the PRT framework, assessed moderate Paragraph B limitations supported by substantial evidence, and incorporated those limitations into the RFC in a manner consistent with SSR 96-8p and Fifth Circuit precedent. Accordingly, the RFC adequately reflects Manriquez's mental functional capacity.

### 4. Whether the ALJ Supportably Found There Were a Significant Number of Jobs in the National Economy that Manriquez Could Perform

At Step Five of the sequential evaluation process, the burden shifts to the Commissioner to demonstrate that other substantial work exists in the national economy that the claimant can perform, given their residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520, 416.920; *see Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir.2000). When the Medical-Vocational Guidelines do not conclusively direct a finding of disability, the ALJ must rely on vocational evidence, typically from a vocational expert ("VE"), to establish that suitable jobs exist. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The ALJ may consult a variety of sources in making this determination, including the Dictionary of Occupational Titles ("DOT") and VE testimony. *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 608 (E.D. Tex. 2009). However, a disability finding cannot rest solely on the DOT's generalized job descriptions

---

[77] *Id.* at 37.
[78] *Id.* at 39.

without additional support. *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000) The Fifth Circuit has made clear that VE testimony carries particular weight because VEs have specialized knowledge about the actual requirements of specific occupations—including work conditions and necessary skills. *Id* (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).

Here, basing his testimony on the DOT, the VE testified that such a person as Manriquez would be able to perform jobs such as "a callout operator, DOT number 237.367-014, with approximately 2,100 jobs in the U.S. national economy, telephone quotation clerk, DOT number 237.367-046, with approximately 9,800 jobs in the U.S. national economy, and charge account clerk, DOT number 205.367-014, with approximately 1,400 jobs in the U.S. national economy."[79] The total number of jobs identified was 13,300 jobs.[80]  Each of the identified jobs are listed as sedentary with a Specific Vocational Preparation ("SVP") of two.[81] The ALJ then asked the VE whether the VE's testimony was consistent with the DOT and the VE replied, "Yes."[82] Based on the testimony of the vocational expert, the ALJ concluded that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy,"[83] thereby satisfying the Commissioner's burden at Step Five.

Manriquez argues that the number of available jobs was insufficient, citing to *Adrienne W. v. Berryhill*, No. 3:17- cv-1218-N (BT) (N.D. Tex. Aug. 24, 2018), *rec. adopted*, No. 3:17-cv-1218-N (BT) (N.D. Tex. Sept. 14, 2018), *Morgan v Colvin*, No. 3:15-cv-2589-L (BH), 2016 WL 5369495 (N.D. Tex. Sept. 6, 2016), *rec. adopted*, 2016 WL 5341305 (N.D. Tex. Sept. 23, 2016),

---

[79] *Id.* at 77.
[80] *Id*.
[81] *Id*.
[82] *Id*.
[83] *Id.* at 41.

and *Johnson v. Colvin*, No. 3:15-cv-1737-N, 2016 WL 1212436, at *4 (N.D. Tex. Feb. 25, 2016), *rec. adopted*, No. 3:15- cv-01737-N, 2016 WL 1228630, to suggest that the identified numbers fall below the threshold of significance.[84] However, the Fifth Circuit has not articulated a bright-line rule for what constitutes a "significant number" of jobs. *Bryant v. Kijakazi*, No. 6:22-CV-01098-ADA-JCM, 2023 WL 12008469, at *4 (W.D. Tex. Sept. 11, 2023); *See Dominguez v. Astrue*, 286 F. App'x 182, 188 (5th Cir. 2008). Rather, courts have consistently applied a "common-sense approach." See *Lirley v. Barnhart*, 124 F. App'x 283, 284 (5th Cir. 2005) (per curiam). For example, courts in this Circuit have held that as few as 16,566 jobs nationally may constitute a significant number. See *Ellis v. Astrue*, No. 11-2121, 2013 WL 595071, at *4 (W.D. La. Jan. 17, 2013), *report and recommendation adopted*, 2013 WL 596425. Similarly, job totals of 18,760 and 25,000 in the national economy have been found sufficient. See *McGee v. Astrue*, No. 08-0831, 2009 WL 2841113, at *6 n.14 (W.D. La. Aug. 28, 2009); *Warren v. Astrue*, No. 09-CV-417, 2011 WL 3444268, at *3 n.2 (E.D. Tex. Aug. 5, 2011).

Additionally, Manriquez did not present any competing vocational evidence or elicit testimony on cross-examination to undermine the VE's findings regarding the total number of jobs identified by the VE.[85] Because Manriquez has not identified legal precedent or record evidence to rebut the VE's testimony, and because the ALJ explained the reliance on the VE and found no conflict with the DOT, there is no basis for disturbing the ALJ's Step Five conclusion.[86] The ALJ properly relied on vocational expert testimony to meet the Commissioner's burden at Step Five. The occupations identified by the VE exist in significant numbers in the national economy, and Manriquez's RFC does not preclude the performance of these jobs. Accordingly,

---

[84] Pl. Br. at 21.
[85] Tr. at 77.
[86] *Id*. at 28-79.

the ALJ's Step Five determination is supported by substantial evidence and consistent with governing legal standards. The jobs identified exist in significant numbers in the national economy, and the record supports the ALJ's finding that Manriquez is capable of performing such work.

### III. CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Commissioner's decision is AFFIRMED.

So ORDERED and SIGNED this 30th day of September 2025.

_____
**LAURA ENRIQUEZ**
**UNITED STATES MAGISTRATE JUDGE**